# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

SOUTHERN GARDENS CITRUS
PROCESSING CORPORATION,

      Plaintiff,

-vs-                                        Case No.:  2:11-cv-377-99SPC
                                               LEAD

BARNES RICHARDSON & COLBURN and
MATTHEW T. MCGRATH, individually,

      Defendants.
_____/

A.DUDA & SONS, INC.,

      Plaintiff,

-vs-                                        Case No.:  2:11-cv-00378-99SPC
                                              MEMBER

BARNES RICHARDSON & COLBURN and
MATTHEW T. MCGRATH, individually,

      Defendants.
_____/

## ORDER

      This matter comes before the Court on Plaintiffs Southern Gardens Processing Corporation and A. Duda & Sons, Inc.'s Motion to Compel Discovery from Defendants (Doc. # 63) filed on July 27, 2012.  Defendants' Response in Opposition to Plaintiffs' Motion to Compel Discovery (Doc. # 64) was filed on August 10, 2012.  Plaintiffs attached Exhibits "E", "F", and "G" (Doc. # 63-5, 63-6, 63-7) to their Motion to Compel (Doc. # 63), identifying the disputed documents from the Defendants' larger privilege and supplemental privilege logs. (Doc. # 63-1, 63-2).  Due to problems that occurred with the formatting of said Exhibits, this Court directed

Plaintiffs to re-file Exhibits "E", "F", and "G" with the Court (Doc. # 70) in a format corresponding with Defendants' privilege logs on August 15, 2012. Plaintiffs re-filed Exhibits "E", "F", and "G" to its Motion to Compel in accordance with the format ordered by the Court on August 20, 2012. (Doc. # 73). Thus, this Motion is now ripe for review.

Plaintiffs move this Court to Compel Defendants to produce the documents identified in Plaintiffs' Exhibits "E", "G", and "F" (Doc. #73-1, 73-2, 73-3) to its Motion to Compel (Doc. # 63) that Defendants have claimed are privileged. In support, Plaintiffs claim that Defendants fail to demonstrate that documents are covered by the attorney-client privilege or that they are protected by the work-product doctrine. (Doc. # 63, p. 3). In response to Plaintiffs' Motion to Compel, Defendants contend that Plaintiffs' Motion to Compel should be denied because the documents are covered by the attorney-client privilege and the work-product doctrine provides additional protection for several of the documents. (Doc. # 64, p. 2).

## FACTUAL BACKGROUND

This dispute involves allegations for breach of fiduciary duty and legal malpractice. (Doc. # 2). Plaintiff, Southern Gardens, is a company that processes citrus fruit and produces orange juice and related products in Hendry County, Florida. (Doc. # 2, p. 2). A. Duda & Sons, Inc. is a company producing orange juice in Hendry County, Florida. There is a long history of United States and Brazilian competition in the orange juice production market in the United States. (Doc. # 2, p. 2). Over the past two and a half decades, orange juice producers in Brazil have periodically sold in the United States orange juice at less than fair market value. (Doc. # 2, p. 2). In response, government entities have enacted orders mandating that monies be paid as anti-dumping duties by the Brazilian orange juice producers into a fund from which several

United States orange juice producers may be reimbursed for lost profits due to the inability to compete with the sales price of Brazilian orange juice.  (Doc. # 2, p. 2).

In July of 1982, Florida Citrus Mutual, an association of Florida orange growers, filed a petition claiming that the Brazilian government was subsidizing frozen concentrate orange juice exports.  (Doc. # 2, p. 2).  The U.S. Commerce Department initiated an investigation, and eventually issued a preliminary determination that the Brazilian government was subsidizing local producers.  (Doc. # 2, p. 2).  On May 9, 1986, Florida Citrus Mutual filed an anti-dumping petition against frozen concentrated orange juice from Brazil again before the U.S. International Trade Commission.  (Doc. # 2, p. 2).  Preliminary and final determinations were affirmative showing that Brazilian orange juice was being sold at below value in order to monopolize the orange juice industry in the United States. (Doc. # 2, p. 2).   The National Juice Producers Association took the position that Florida Citrus Mutual did not have standing to bring the petition, so it became necessary for the individual producers of orange juice in the United States to become plaintiffs in the administrative proceedings before the U.S. International Trade Commission.  (Doc. # 2, p. 3).   The law firm of Barnes Richardson & Colburn ("BRC") and attorney Matthew T. McGrath, a lawyer with BRC, acted as counsel for Florida Citrus Mutual and also represented individual orange juice producers in various administrative proceedings. (Doc. # 2, p. 3).  The fees for legal representation of the individual orange juice producers were paid to Florida Citrus Mutual, who then paid Barnes Richardson & Colburn for the legal services.  (Doc. # 2, p. 3).

In October of 2000, the Continued Dumping and Subsidy Offset Act of 2000 ("the Act"), also known as the Byrd Amendment, was enacted which provided that assessed duties pursuant to an anti-dumping order must be distributed to affected domestic producers. (Doc. # 2, p. 3).

Plaintiffs in this case, along with other domestic producers of orange juice, qualified under the Act. (Doc. # 2, p. 3-4).    On August 15, 2002, attorneys McGrath and O'Toole, with BRC, prepared legal memorandum directed to Plaintiffs and other producers offering their legal assistance in the preparation and filing of qualified claims for recovery of monies under the Act. (Doc. # 2, p. 4).  Subsequently, BRC represented Plaintiffs and others in various proceedings in regard to the injuries suffered by the orange juice industry. (Doc. # 2, p. 5).

In 2007, the U.S. Customs & Border Protection required that the anti-dumping duties which had been collected would then be available at a future date to be paid to Florida citrus growers who lost profits due to the Brazilians flooding the market with underpriced orange juice. (Doc. # 2, p. 6).   Barnes Richardson & Colburn notified Plaintiffs of their need to file Certification to Claim a Distribution in order to be qualified to receive a portion of the distributions and assisted with the completion and filing of said Certification. (Doc. # 2, p. 7). Notification was again published in the Federal Registry on May 30, 2008 for Fiscal Year 2008, May 29, 2009 for Fiscal Year 2009, and June 1, 2010 for Fiscal Year 2010, regarding the availability of funds for distribution to affected domestic producers that included Plaintiff, Southern Gardens. (Doc. # 2, p. 7).

Plaintiffs claim in this legal malpractice case that BRC and McGrath failed to timely notify Plaintiff, Southern Gardens, of their need to file subsequent Certifications to Claim a Distribution of Continued Dumping and Subsidy Offset and Certifications. (Doc. # 2, p. 7). Additionally, the Complaint alleges that since Plaintiff, Southern Gardens, was not timely notified and was otherwise unaware of said filing deadlines, no Certifications were filed which legally precluded them from their proportionate share of the available funds. (Doc. # 2, p. 7). Plaintiffs contend that BRC notified Florida Citrus Mutual, along with several other members of

4

the Florida citrus industry about said annual notices, yet they conspicuously failed to notify Southern Gardens of the application deadline to their detriment. (Doc. # 2, p. 7).

Plaintiffs brought this action for Breach of Fiduciary Duty and Malpractice against Defendants, BRC and McGrath, to recover for damages incurred by Plaintiffs as a result of Defendants failing to notify Plaintiffs of when to file the Certifications.  (Doc. # 2).  Along with the Complaint, Plaintiffs served its first Request for Production (Doc. # 33) on Defendants on or about June 7, 2011.  (Doc. # 63, p. 1).  Plaintiffs requested, among other things, e-mail correspondence between Defendants, Citrus World, "an orange juice processor and grower, that had a substantially similar legal relationship with Defendants and Plaintiffs during the times relevant to the Complaint, and a select few correspondence directed to various entities." (Doc. # 63, p. 2).  Plaintiffs agreed to Defendants' request for an extension of time to respond to the discovery requests, making Defendants' responses due on or before October 31, 2011. (Doc. # 63, p. 2).  On October 31, 2011, the deadline to respond to Plaintiffs' First Request for Production, Defendants served their Responses to Plaintiffs' Request for Production and a corresponding privilege log.  (Doc. # 33).  Following the actual production of these items, Defendants' Counsel informed Plaintiffs that some correspondence was omitted from Defendants' Responses. (Doc. # 63, p. 3).  On or about April 13, 2012, Defendants produced additional documents. (Doc. # 63, p. 3).  Again, on April 20, 2012, Defendant produced additional documents responsive to Plaintiffs' First Request for Production, along with a 609 page supplemental privilege log. (Doc. # 63, p. 3).   It is the privilege logs produced by Defendants, and the applicable privileges claimed by Defendants, that are the subject of Plaintiffs' Motion to Compel.

Plaintiffs move to compel the production of 161 emails. Plaintiffs claim that Defendants fail to demonstrate that there was an attorney-client privilege at the time the documents were created or that the documents are protected by the work-product doctrine. (Doc. # 63, p. 3). Plaintiffs request this Court enter an Order compelling Defendants to produce, or at a minimum allow this Court to conduct an *in camera* review of the documents identified within Plaintiffs' Exhibits "E", "F", and "G." (Doc. # 63, p. 4). In response to Plaintiffs' Motion to Compel, Defendants contend that Plaintiffs' Motion to Compel should be denied because the documents are covered by the attorney-client privilege as they are confidential communications with BRC and Florida Citrus Mutual members in furtherance of an attorney-client relationship. (Doc. # 64, p. 2). Further, Defendants allege that the work-product doctrine provides additional protection for several of the documents that Plaintiffs seek to compel production of. (Doc. # 64, p. 2).[1]

## DISCUSSION

The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Discovery requests are not only limited to the issues raised in the pleadings, nor limited only to evidence that would be admissible at trial. Id. However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Id. "Courts have long held that '[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it

---

[1] Defendants have agreed to produce one of the subject documents contained in Defendants' privilege log, which is an email from Clark Baxley to emily.morris@dhs.gov on 8/2/10. The other 160 emails remain in dispute and are the subject of this Motion to Compel.

might conceivably become so.'" <u>Henderson v. Holiday CVS, L.L.C.</u>, 2010 U.S. Dist. Lexis 80660, at *6 (S.D. Fla. Aug. 9, 2010) (quoting <u>Food Lion, Inc. v. United Food & Commercial Workers Intern. Union</u>, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)).

Federal Rules of Civil Procedure 33 and 34 generally cover Requests for Production and Interrogatories, including timing, etc. *See* Fed. R. Civ. P. 33, 34.  If the serving party does not receive a response to their interrogatories and request for production, then the serving party may request an order compelling disclosure.  Fed. R. Civ. P. 37(a).  Whether or not to grant the motion to compel is at the discretion of the trial court.  <u>Commercial Union Ins. Co. v. Westrope</u>, 730 F.2d 729, 731 (11th Cir. 1984).  The trial court's exercise of discretion will be sustained absent a find of abuse of discretion to the prejudice of a party.  <u>Id.</u>

### *Attorney-Client Privilege*

Plaintiffs allege that Defendants improperly assert the attorney-client privilege with respect to the documents they are seeking to compel because: (1) Defendant BRC does not represent entity members outside of Florida Citrus Mutual in regard to the Byrd Amendment Certifications, thus communications related to the Byrd Amendment Certifications between BRC and Citrus World should not be protected by the attorney-client privilege, and (2) the attorney-client privilege claimed between BRC and Florida Citrus Mutual has been waived by disclosing privileged materials to third parties.  (Doc. # 63, pp. 6-10).  Defendants allege that the attorney-client privilege applies to these documents because "(1) these e-mails contain confidential legal communications between Florida Citrus Mutual ('FCM'), its member companies, and its law firm, Barnes Richardson & Colburn ("BRC"); (2) these communications are protected by the attorney-client privilege; and (3) the privilege has not been waived."  (Doc. # 64, p. 1-2).

The attorney-client privilege is only available when all the elements are present. Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc., 230 F.R.D. 688, 690 (M.D. Fla. 2005) (citing Provenzano v. Singletary, 3 F. Supp. 2d 1353, 1366 (M.D. Fla. 1999), *aff'd,* 148 F.3d 1327 (11th Cir. 1998)).   The elements of the attorney-client privilege are: (1) legal service advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. Universal City Dev. Partners, Ltd., 230 F.R.D. at 690 (quoting Int'l Tel. & Tel. Corp. v. United Tel. Co., 60 F.R.D. 177, 184-85 (M.D. Fla. 1973)).   The party asserting the privilege has the burden of proving the existence of the privilege and that the particular communications were confidential. United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991).

Courts have used the term "vicarious client" to describe a member of an organization that is being represented by the attorney for the organization.  *See* Glueck v. Jonathan Locan, Inc., 653 F.2d 746, 749 (2d Cir. 1981).  Although it has not been elaborated upon extensively, courts have found that the relationship between a member of an association and the attorney and/or law firm representing the association, can prevent the attorney from representing a client against the member because of conflict of interest.  *See* Alexander v. Tandem Staffing Solutions, Inc., 881 So.2d 607, 611 (Fla. 4th DCA 2004) (discussing Glueck, 653 F.2d at 749-50).

The issue present in the instant matter is whether an attorney-client relationship existed between Florida Citrus Mutual's members and BRC.  Despite Plaintiffs' contention that there was no attorney-client relationship between the members of Florida Citrus Mutual and BRC, courts have found to the contrary, and termed such a client a "vicarious client."   Further, courts

have found this relationship to cause conflicts of interest where the matter dealt with between the association and the attorney is significantly related to the matters dealt with between the association's members and the attorney.  Glueck, 653 F.2d at 750.

It appears from this Court's review of the privilege and supplemental privilege logs that the communications sought from Defendants all occurred following the enactment of the Byrd Amendment in 2000 (Doc. # 2, p. 4), and after BRC offered legal services to Florida Citrus Mutual's members, including Southern Gardens, A. Duda & Sons, Inc., Citrus World, and others. (Doc. # 2, pp. 5-6).  Plaintiffs specifically acknowledge in their Complaint that BRC sent legal memorandum to members of Florida Citrus Mutual in August of 2002, and began representing them, namely in relation to the preparation and filing of claims for recovery of monies collected from importers under the anti-dumping order, but also in other related matters, at least until 2011. (Doc. # 2, p. 5).  The documents sought by the Plaintiffs are all within this time range, from August 2002 through 2011. (See Doc. # 73-1, 73-2, 73-3).

Additionally, the claims for legal malpractice and breach of fiduciary duty that Plaintiffs have brought in this matter are premised upon an attorney-client relationship that existed between itself, as a member of Florida Citrus Mutual association, and the association's law firm, BRC, arising out of the Byrd Amendment Certifications. (Doc. # 2).  Specifically, Plaintiffs states in its Complaint that BRC acted as counsel for Southern Gardens and other members (Doc. # 2, p. 4), offered legal assistance to Florida Citrus Mutual's members in filing claims for the recovery of monies (Doc. # 2, p. 5), "consistently represented" Plaintiff, as a member of Florida Citrus Mutual, in legal matters regarding the recovery of monies (Doc. # 2, p. 6), and assisted Plaintiffs in filing their initial Certification to Claim a Distribution of Continued Dumping and Subsidy Offset. (Doc. # 2, p. 7).   Further, Plaintiffs states "there was an attorney-client

relationship that had been ongoing since the inception of the filing of petitions . . . [in] 2002 and continuous representation of [Plaintiff] before various courts and administrative forums until March/April, 2011 when their services were terminated." (Doc. # 2, pp. 7–8).

However, when it comes to obtaining items from BRC, the Plaintiffs are now contending that there is no attorney-client relationship between the other members of Florida Citrus Mutual and the association's law firm in regard to the Byrd Amendment Certification, even though Plaintiff, Southern Gardens, admits that Citrus World, one of the Florida Citrus Mutual members, had a substantially similar relationship with Defendants as the Plaintiffs do. (Doc. # 63, p. 2). Therefore, the Court finds that an attorney-client relationship exists between BRC and FMC members, and therefore their e-mail communications are privileged.

Plaintiffs next argue that if the requested documents were privileged, that the privilege was waived by Defendants by revealing the privileged documents to third parties. (Doc. # 63, pp. 9-10). Specifically, Plaintiffs assert that "BRC has provided the allegedly privileged information to an entity or person of which BRC and FCM did not have, as it relates to an attorney-client privilege, a reasonable expectation of privacy." Id. at 10.

The Florida Statute on waiver of privilege by voluntary disclosure provides that

> [a] person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. **This section is not applicable when the disclosure is itself a privileged communication**.

Fla. Stat. § 90.507 (emphasis added). As discussed above, the communication between the law firm and the members of Florida Citrus Mutual is itself privileged communication. Therefore, the disclosure of such material does not constitute a waiver of the privilege under Fla. Stat. § 90.507. Accordingly, this Court holds that the materials sought by Plaintiffs in its Motion to

Compel Production (Doc. # 63) are protected by the attorney-client privilege and the privilege has not been waived.[2]

### ***Work Product Privilege***

Like the attorney-client privilege, the party asserting the work-product privilege has the burden to prove that the documents sought are protected work product. Palmer v Westfield Ins. Co., 2006 WL 2612168 (M.D. Fla. June 30, 2006).   The work product privilege "typically applies only to documents prepared principally or exclusively to assist in anticipation or ongoing litigation." Id. at * 3.   Unlike the attorney-client privilege, which is controlled by state law in diversity cases, the work product privilege is controlled by Rule 26 of the Federal Rules of Civil Procedure. Id. at * 2.   The Rule states in pertinent part:

> a party may obtain discovery of documents . . . otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.   In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R .Civ. P. 26(b)(3).

---

[2] Plaintiffs relied in part in their Motion on the deposition testimony of Mr. McGrath, an attorney at BRC and a Defendant in this matter, who stated with regard to "various companies" who were members of FCM:

> Q.      Well, at the same time you were acting as their lawyers as well, were you not?
> A.      In the case I was, but not in the – in the Byrd Amendment procedures.   It's totally different procedures.
> McGrath Deposition, pg. 199 (Doc. #63, n.1).

With regard to this point, the Court notes that the client is the holder of the privilege.   See Tambourine Comercio International SA v. Solowsky, 312 F. App'x 263, 291 n.37 ("The attorney-client privilege 'belongs solely to the client,' and the client may waive it, either expressly or by implication.") (quoting Cox v. Adm'r U.S. Steele & Carnegie, 17 F.3d 1386, 1417 (11th Cir. 1994)).   The Court cannot find any support for the contention that Mr. McGrath's subjective belief of who the client was matters in a determination of whether an attorney-client relationship existed.   The facts of this case, and Plaintiffs' own allegations in their Complaint, indicate that an attorney-client relationship existed between BRC and the FCM members.

In addition to the attorney-client privilege, Defendants assert that the documents sought are also protected by the work-product privilege because they contain information prepared in anticipation of administrative proceedings. (Doc. # 64, p. 2).  Plaintiffs contend that the sought information is not protected by the work-product privilege because the documents were prepared in the ordinary course of business, as there was never an anticipation of litigation arising out of the Byrd amendments or filings when they were created. (Doc. # 63, p. 12).  Due to this Court finding that the documents sought by Plaintiffs are protected by the attorney-client privilege, the Court finds no need to discuss the applicability of the work product doctrine.

Accordingly, it is now

**ORDERED:**

Plaintiffs' Motion to Compel Defendants' Production of Documents Responsive to Plaintiffs' First Request for Production (Doc. # 63) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this _____ day of August, 2012.

Copies:
All Parties of Record